United States District Court
For the Northern District of Ohio
11/13/20

**FILED**
3:53 pm Nov 18 2020
**Clerk U.S. District Court**
**Northern District of Ohio**
**Cleveland**

Martin Robinson, Maiya McCoy, Jennifer )
Ginley, Laura Thompson. )
Complainants )
    V. ) Case no: **1:2020cv-02489**
 )
State of Ohio, Ohio State Patrol, )
Department of Rehabilitation and )
Correction, Correction Inspection Committee )
(CICC), ) **Honourable Judge: Dan Aaron Polster**
 Sheffield Lake Police )
Department, Lorain County Swat/Lorain County )
Sheriff Department, )
Brinda Holly, James (Jim) Simone, )
(Elyria) Detective Robert Whiting, )
(Elyria) Duane Whitely, John Hunter, Paul Adams, )
Lorain County Sheriff Deputy Fuller, )
Heath Tester, Judge Chris Cook, )
Attorney John Toth, Laura Dezort, )
   Debra Hurlburt, Tony Cillo, et al., )
 )
      Defendants… )
 )

## COMPLAINT AGAINST POLICE MISCONDUCT PERSUANT TO FEDERAL STATUTE, 42 U.S.C. § 1983

Now comes, your Complainants, pro se, filing this complaint against the Lorain County Police department, Lorain County Swat team, for misconduct, Illegal search and seizure, non-compliance of due process of law based on the following grounds.

**FACTS**

1. That the complainants, Martin Robinson, Jennifer Ginley, Laura Thompson and, Maiya McCoy are all residents of the State of Ohio.

2. That the list of defendants played their parts in violating the civil rights of the complainants using excessive force, unreasonable harassment, failure to intervene and undue search and seizures without due process of

law resulting in wasted resources, delayed justice, and allowing individuals to be guilty of crimes potentially going unpunishment.

3. That the Civil rights claims are an important part of our legal system, providing a balance between the duty of law enforcement, prosecutors and judges to uphold the laws, and the rights of individuals to be free from police misconduct which was brutally violated by the officers who are supposed to be the safeguards of law enforcement and protection of civilians even if they are accused.

4. That the event of brutality, professional misconduct and series of violations are not only U.S civil rights law but also the human rights law, happened on May 31st, 2018, when the Lorain County Swat Team arrived on scene to serve an erroneous warrant on Mr. Robinson.

5. That the Defendants took a scorched earth approach when they rammed an armored personal carrier/mine resistant MRAP into Robinson's home. They came equipped with Machine guns, snipers, and other available displays of militarized policing. Defendants used and have shown unreasonable force by displaying weapons. The defendant's intentions or motivations were controlling and in bad faith to threaten and harass the complainants and other witnesses present.

6. That the defendants had good knowledge of the sensitive and vulnerable mental condition of Mr. Robinson and despite of the knowledge, the defendant's rammed the mine resistant vehicle into the home of plaintiff without taking due care of the mental condition of Mr. Robinson.

**STATEMENT OF CLAIM**

7. That the complainants hereby accuse the defendants Debra Hurlburt and other officers of fraud and deceit regarding the peaceful compliance of complainants with the defendants. 42 U.S.C. 1983. A person may vindicate violation of Federal Constitutional or Statutory rights by bringing an action under 42 U.S.C. 1983. The statute states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

8. That the complainants hereby accuse the Lorain County Swat of a breach of peace as it was evident and clear from their brutal and un-peaceful actions that the defendants wanted to create distress, trouble and

anxiety for the complainants instead of resolving the issue peacefully which was unjustified criminal persecution by the defendants. A criminal prosecution is malicious if law enforcement pursues groundless charges. Malicious prosecutions include situations in which law enforcement:

- charges a person with a crime to cover up police misconduct, such as excessive use of force or false imprisonment;
- intends to punish a person by harassing them with criminal proceedings;
- intends to ruin a person's reputation by bringing unfounded criminal charges against them; or
- charges a person with a crime to divert attention from the real perpetrator.

9. That these same defendants are accused of gross negligence when they used the force on the complainants. Despite knowing the condition of Mr. Robinson, defendants continued to cause torture on Mr. Robinson ignoring the information received.

10. That the Supreme Court has made it clear on multiple occasions that law enforcement agencies are not required to provide protection to citizens who are forced to pay for their services. Despite of these issues the Lorain County Swat Team engaged in unnecessary acts of false imprisonment with Laura Thompson and her 90-year-old mother in law. Other residents who the officers knew could move freely.

11. Plaintiffs hereby accuses several defendants of violating first amendment rights.

12. That Jennifer Ginley had to face retaliation and harassment for being a witness and recording officers who were engaging in what she saw as unlawful conduct. Miss Ginley was charged with misconduct at an emergency for walking outside of her home to see what was going on but as stated before, other residents who the officers knew could move freely.

13. That in the U.S, if the swat team has information that a person is willing to comply, they are to allow the compliance. They had information that Mr. Robinson was mentally ill and was afraid he would be harmed. This information was relayed to the swat team, Sheffield Lake Police dispatcher and Chief Campo. They made him sit in the home for quite a while. He used this time to call everyone to assist him, but the team would not let him out the home. Instead they told him no while causing torture while waiting on a third search warrant to break into his home. He suffers from PTSD after a brutal attack by officers while working where he was lawfully allowed to be years ago. In *Graham v. Connor, the Court established that the reasonableness of an officer's use of force, is to be determined from the perspective of the officer under the circumstances. The officer is under no obligation or have no right to use excessive force, threat or harassment at the person who is ready to comply and is not a fleeing.*

14. That the Fourth Amendment to the U.S. Constitution provides: *"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."* An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Graham v. Connor, 490 U.S. 386, 397 (1989)

15. That Officer Robert Whiting and other defendants are accused of obstructing justice and tampering with evidence in violation of ORC - 2921.12.
16. That the Plaintiffs are accusing defendants of dereliction of duty under section 606.19, that states as follows
17. That Chief Anthony Campo called Martin Robinson on his personal house phone before and asked Martin Robinson to turn himself in before without needing the assistance of a whole swat team

*"(A) No law enforcement officer shall negligently do any of the following:*
1. *Fail to serve a lawful warrant without delay.*
2. *Fail to prevent or halt the commission of an offense or to apprehend an offender when it is in the law enforcement officer's power to do so alone or with available assistance.*
3. *Misplace police reports and grievances*

*(B) No law enforcement, ministerial, or judicial officer shall negligently fail to perform a lawful duty in a criminal case or proceeding.*
*(C) No officer, having charge of a detention facility, shall negligently do any of the following:*
1. *Allow the detention facility to become littered or unsanitary.*
2. *Fail to provide persons confined in the detention facility with adequate food, clothing, bedding, essentials such as toothpaste/ soap and medical attention.*
3. *Fail to provide persons confined in the detention facility with adequate legal services*
4. *Continue to hinder prisoner from legal services by continuing to destroy legal paperwork*
5. *Opening and reading legal mail when the prisoner is not present*
6. *Failing to provide persons confined in the detention facility with the right to file grievances and have them properly investigated*
7. *Misplace and destroy reports and grievances*
8. *Fail to control an unruly prisoner, or to prevent intimidation of or physical harm to a prisoner by another.*
9. *Allow a prisoner to escape.*
10. *Fail to allow prisoners to have rights to speech and religion, to the extent these rights do not interfere with their status as inmates.*
11. *Fail to observe any lawful and reasonable regulation for the management of the detention facility.*
12. *Intentionally causing pain and threatening prisoners with no legal justification*

*(D) No public official shall recklessly create a deficiency, incur a liability, or expend a greater sum than is appropriated by the Council for the use in any one year of the department, agency, or institution with which the public official is connected.*
*(E) No public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office.*
*(F) Whoever violates this section is guilty of dereliction of duty, a misdemeanor of the second degree."*

18. Thus, because the ADA does not distinguish prisons from non-prisons, it applies to protect prisoners with disabilities, guaranteeing reasonable accommodations.

19. That Martin Robinson has exhausted all administrative remedies as he was also denied access before challenging the conditions of his confinement in court
20. That Martin Robinson continued to face retaliation leading to abuse multiple times by staff and other inmates leaving Mr. Robinson no choice but to stay in solitary confinement full-term as he continues to suffer from more abuse and harassment
21. That Ohio State Patrol misplaced plaintiff's police report and failed to investigate activities reported regarding ODRC staff.
22. That the ODRC failed to investigate complaints and grievances
23. That the correctional Inspection Committee failed to investigate complaints and grievances as they defrauded the complainants in the process.
24. That both Ohio and federal law protects against police misconduct. The most important protection is the federal statute, *42 U.S.C. § 1983*. It allows plaintiff to file a lawsuit against anyone who "under color of" state law deprives another of the "rights, privileges, or immunities secured by the Constitution" or federal statutes. Under *42 U.S.C. § 1983*, plaintiffs are alleging the violation of a right secured by the Constitution and laws of the United States, and has shown that the alleged deprivation was committed by the officers acting under colour of state law. Gray v. City of Detroit, 399 F.3d 612, 615 (6th Cir.2005), also see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978).

25. The Police officers have done misconduct and violated the U.S. Constitution in several different ways:

- Excessive force and police brutality;
- Illegal searches and seizures.
- Denial of proper medical care for detainees or inmates/sexual misconduct *Law enforcement officers who engage in non-consensual sexual contacts with persons in their custody deprive those persons with liberty without due process of law, which includes the right to bodily integrity.*
- Failure to intervene
- Deliberate indifference to a serious medical condition or a substantial risk or harm

26. That the Supreme Court has held that "use of force to prevent the escape of suspects, whatever the circumstances, is constitutionally unreasonable. ***Tennessee v. Garner, 471 U.S. 1, 11 (1985).***
27. That the informant gave officers false information about the plaintiff. ***In Franks v. Delaware, 438 U.S. 154 (1978)***, the court held that the defendant in a Franks hearing can argue that the officers acted with a reckless disregard for the truth.
28. That the officers who signed the affidavit led to the warrant for 5/31/18 entertained serious doubts as to the truth of the allegations in the affidavit. The circumstances surrounding the affidavit and warrant reveal obvious reasons to doubt the veracity of the allegations. In Theodor v. Superior Court (1972) 8 Cal. 3d 77, 100-101 [104 Cal. Rptr. 226, 501 P.2d 234], we held that "pursuant to a motion under Penal Code section 1538.5, a defendant may challenge the factual veracity of an affidavit in support of a [search] warrant and if statements contained therein are demonstrated to be false and if the affiant was unreasonable in believing the truth of such information.
29. In ***Franks v. Delaware, 438 U.S. 154 (1978), United States v. McMurtrey, 704 F.3d 502 (7th Cir. 2013) and United States v. Harris, 464 F.3d 73 (7th Cir. 2006),*** the Court ruled that if statements in an affidavit

are deliberately false or made in reckless disregard for the truth, the Judge must determine whether they are material to probable cause (i.e. If the false statements are removed from the affidavit, the Judge must decide whether the warrant fails for lack of probable cause). If probable cause is insufficient, evidence suppression will follow.

30. That in the **United States v. Hulscher, *2017 WL 657436 (D.S.D. February 17, 2017)***, the court ruled that the first warrant didn't allow the second search, and the nonresponsive files were still protected by the Fourth Amendment after the first warrant had been executed. If the second search was permitted, a second warrant was required for it. In addition to any state-law claims, both malicious (criminal) prosecution and false arrest are recognized as separate violations of a person's constitutional right against unreasonable searches and seizures protected by the Fourth Amendment of the U.S. Constitution. Where malicious-prosecution claims involve an arrest or criminal proceeding, plaintiffs may be able to file in either state or federal court.

31. That Maiya McCoy's rights were violated by the state of Ohio when there was an overly broad search of her cell which contained private photos, emails, and medical info. Erroneous information was used to gain control of it. This was to justify acts caused by the defendants. Being a free citizen, the law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of the plaintiff person that needs to be analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989).

32. According to Graham v. Connor, 490 U.S. 386, 397 (1989, the courts needs to analyze the plaintiff's claim under a "reasonableness" inquiry. The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

33. That Maiya McCoy and Martin Robinson are accusing prosecutors Tony Cillo, Laura Dezort, judge Chris Daniel Cook and Attorney John Toth of depriving Martin Robinson of having a fair trial.

34. That prosecutor Laura Dezort showed strong interest in seeking a conviction and that prosecutor Tony Cillo displayed biasness and harassment towards witnesses while meeting them for the first time.

35. Laura Dezort and Tony Cillo are accused of malicious Prosecution

36. That plaintiff Martin Robinson witnessed prosecutor Cillo displaying acts of bribery in the courtroom with no disregard as if it were a normal routine for him.

37. That prosecutor Tony Cillo approached Debbie Hurlburt (with the media/cameras present in the courtroom) to celebrate right after Martin Robinson's sentencing hearing.

38. The primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict. The prosecutor serves the public interest and should act with integrity

39. That plaintiff Maiya McCoy and Martin Robinson are accusing Judge Chris Cook and Attorney John Toth causing a violation of Mr. Robinson's privacy when they coerced another to obtain private medical records of Martin Robinson without his consent and while defrauding him in a deceitful manner and without Robinson's knowledge. Although this refers to covered entities and their businesses and businesses associations lawyers in a firm may, in the course of the firms practice, disclose each other information relating to a client of the firm, **unless** the **client** has instructed thar particular information be confined to specific lawyers.

40. In *Biddle v. Warren General Hospital*, 715 N.E.2d 518 (Ohio 1999) the court stated that Unauthorized access to and disclosure of private medical information can have serious consequences for both the person whose information has been disclosed and for those who have violated the confidence. The privacy and integrity of patients' medical records are protected by both federal and Ohio state laws.

41. That Judge Chris Cook and Attorney John Toth, Tony Cillo and Laura Dezort intentionally hid and withheld the important parts of the records which could have assisted in the case giving Mr. Robinson a fair trial.

42. That prosecutor Tony Cillo, Laura Dezort, Chris Cook, John Toth and Robert Whiting were not interested in information that did not assist in achieving a conviction

43. That Jennifer Ginley, Laura Thompson and Maiya McCoy were all witnesses when the swat team came to serve a warrant on Martin Robinson on 5/31/18.

44. That the plaintiffs filed a suit for the mental distress they had to endure and to provide other information regarding on what occurred on 5/31/18

45. That plaintiffs are accusing judge Chris Cook of Obstruction of Justice in the handling of Maiya McCoy, Laura Thompson and Jennifer Ginley's civil suit when being asked to recuse himself several times because of a conflict of interest and also him already forming an opinion on the case with Martin Robinson.

46. That Judge Chris Daniel Cook then removed plaintiff Jennifer Ginley and her daughter from his Facebook account as friends after being asked to remove himself from the case.

47. That judge Chris Cook still ruled on the case after knowing about the conflict of interest dismissing it without prejudice.

48. It is apparent from the above-mentioned facts that Judge Cook had a personal interest in the civil case as he tried to manipulate the situation, cross all the limits to harass the complainant and then he ruined reputations further by submitting a referral as unlawful/unauthorized Practice of law and making public statements about the complainants in which made it to Newspapers and articles which are now online for public view.

49. Chris Cook also mentioned individuals who were not included in the complaint as well as other false information. He placed false information to articles in the newspaper that Complainants were suing the Sheffield Village police while carelessly adding to the emotional distress as he called out other officers not involved. Chris Cooks knows Sheffield Village police was not a defendant in the case. Making a Public statement when the matter is already pending before the court is a violation of the American Bar Association Rules. The Canon 3A (6) of the 1972 American Bar Association Model Code of Judicial Conduct states that A judge should abstain from public comment about a pending or impending proceeding in any court.

50. That the Plaintiffs are accusing Officer Jim Simone of Sheffield Lake Police department, and Cleveland Municipal Court, John Hunter of Sheffield Village, Paul Adams and John Doe 1, John Doe 2 and Jane Doe 3, Jane Doe4, John Doe 5, John Doe 6, John doe 7, John Doe 8, John doe 9, John doe 10, John doe 11, john doe 12 and other John does of menacing, harassment and intimidation causing emotional distress on many occasions. Defendants mentioned here continued to follow and harass at places of employment, their homes and other areas they gained access to.

51. That the Plaintiffs notified the Mayor of the brutal and ultra vires behavior and conduct of the defendant's, but she failed to take notice of the matter. As per U.S law for the code and conduct of Mayors, it is the responsibility of Mayor to take action of the ultra vires actions of the government officials in order to ensure the peace and justice in the state.

52. While drafting suit plaintiffs wrote the name of defendant Mayor Holly Brinda since they felt she should have taken part in assisting plaintiff after getting knowledge about the illegal acts of officers in her city.

53. That Mayor Brinda Holly ignored plaintiffs as they left voicemails and sent fax's as plaintiffs found information stating this behavior of being a normal occurrence of Mayor Brinda's reaction to citizens approaching her with concerns.

54. That it was not a mistake on the part of plaintiff to mention Mayor Holly Brinda as a defendant. Unless Mayor Holly Brinda does not share responsibility as a public official then plaintiff has no legal claim to the extent of defendant Mayor Holly Brinda and will have no objection on a voluntary dismissal or removal of defendant Mayor Holly Brinda.

55. However, plaintiffs feel it is accurate to leave Mayor Brinda as a defendant since she was given awareness about an Officer's illegal activity by the name of Robert Whiting. Under Ohio Laws and Rules Chapter 733.34 **supervision of conduct of officers:** *The mayor shall supervise the conduct of all officers of the municipal corporation, inquire into and examine the grounds of all reasonable complaints against any such officers, and cause their violations or neglect of duty to be promptly punished or reported to the proper authority for* **correction**

56. **Evidence will show the deceit, negligence and actions by the defendants**

57. That the original case should have included Mr. Robinson as plaintiff who has rights in the current case at hand. That proceeding in this case without him shall violate his fundamental and constitutional rights of fair trial. Transferring this case to the court where the original case is, shall give Mr. Martin opportunity to represent his claim and protect his rights in this trial.

I DECLARE UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THE FOREGOING DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND UNDERSTANDING.

**CONCLUSION**

Wherefore, the Plaintiffs pray that the injunctions must be granted against further unlawful action and judgement against defendants be granted for compensatory and punitive damages in the amount of $25,000 or more and all recoverable damages in such sums as the trier of fact deems proper including judgement against defendant for attorney fees and costs of this action and for such other and further relief as the Court deems proper under 42 U.S.C. § 1988. Also, the Plaintiff requests this honorable court to determine the

legality of warrants illegally obtained by the defendants and legality of the acts of the police officers for searching the plaintiff's phone.

Furthermore, the plaintiff's request this honorable court to allow this case to be transferred to the Northern district court, where the similar case (Case No. 1:20-CV-01330-SO.) that has interest in the case at hand is being dealt under Ohio Crim. Rule 21. Also, Mr. Martin who Is the plaintiff in the original case and having interest in the case at hand shall also have opportunity to present his case and protect his rights.

**DATE: November 13, 2020**

**Respectfully submitted,**

**Martin Robinson pro se**

**Laura Thompson pro se**

**Maiya McCoy   pro se**

**Jennifer Ginley pro se**
**Plaintiffs**